UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY E. OSBORNE,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. C16-69 RJB-BAT<br><br>**REPORT AND RECOMMENDATION** |

Mary E. Osborne appeals the ALJ's decision finding her not disabled. Dkt. 12. Utilizing the five step sequential evaluation process, the ALJ found at step one Ms. Osborne last worked on May 7, 2009; at steps two and three that osteoarthritis and obesity are severe impairments, and that these impairments did not meet the requirements of the Listings; that Mr. Osborne retained the residual functional capacity ("RFC") to perform light work with some additional limitations; and at step four Ms. Oborne could perform her past relevant work as a dispatcher or receptionist, and is therefore not disabled. Tr. 101-110. The Appeals Council denied review making the ALJ's decision is the Commissioner's final decision. Tr. 1-4.[1]

Ms. Osborne contends the ALJ erroneously rejected the opinions of treating doctor David

---

[1] The rest of the procedural history is not relevant to resolution of this matter and is thus not discussed.

REPORT AND RECOMMENDATION - 1

Tauben, M.D., specifically his Fibromyalgia diagnosis, and also improperly discounted her testimony.[2]

As discussed below, the ALJ erred in rejecting Dr. Tauben's diagnosis of fibromyalgia. This error was harmful because it resulted in a RFC determination that did not account for all of Ms. Osborne's limitations. However, the ALJ gave at least one valid reason supported by substantial evidence to discredit Ms. Osborne's testimony. The ALJ's credibility determination should therefore be affirmed. Because the ALJ harmfully erred, the Commissioner's final decision should be case should be **REVERSED**. As to the scope of remand, the record is not fully developed, and the Court accordingly recommends the matter be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.    The ALJ erroneously rejected Dr. Tauben's diagnosis of Fibromyalgia**

David Tauben, M.D., is a pain specialist who has treated Ms. Osborne since 2009. Tr. 263.[3] As the ALJ noted, Dr. Tauben diagnosed Ms. Osborne with chronic pain syndrome, severe osteoarthritis, fibromyalgia, and major depression. Tr. 108. Dr. Tauben found Ms. Osborne's widespread pain and depression markedly limited her ability to maintain attention and concentration for extended periods of time and to perform activities within a schedule, maintain regular work attendance and be punctual for work. *Id.* The doctor also assessed Ms. Osborne with a GAF score of 30, which as the ALJ noted indicates "serious impairment in communication or judgment." *Id.*

Ms. Osborne contends the ALJ misevaluated Dr. Tauben's opinions. In specific, she argues the ALJ erroneously rejected Dr. Tauben's diagnoses of fibromyalgia. Tr. 5-6. If she is

---

[2] Ms. Osborne's arguments are all contained in her opening brief as she did not file a reply brief.
[3] Other parts of the record indicate Dr. Tauben has treated Ms. Osborne since 1990. *See e.g.* Tr. 241.

correct, this error would affect the validity of the ALJ's step two finding that fibromyalgia is not a severe impairment, and the ALJ's RFC determination. The Commissioner defends the ALJ arguing the ALJ correctly rejected Dr. Tauben's diagnosis. Dkt. 13 at 3.

At step two, the ALJ indicated that a claimant must present the following evidence in order to show that fibromyalgia is a severe impairment: First the claimant has a history of widespread bilateral body pain and axial skeletal pain that has persisted for at least three months; second that a physician has conducted a medical examination which includes testing the claimant's tender point sites with at least 11 tender points; and third, that the physician has ruled out other physical or mental disorders that could cause the claimant's symptoms or signs. Tr. 103.

The ALJ found fibromyalgia is a not medically determinable impairment on the following basis. First, the ALJ found "Dr. Tauben did not find or document a history of widespread pain in all four quadrants of the body (i.e., on the right and left sides and above and below the waist)." The record shows otherwise. Dr. Tauben did not find Ms. Osborne suffered from pain limited to one "quadrant" or part of her body. Rather he found Ms. Osborne suffers from "widespread pain," *see* Tr. 270, 274, and "widespread fibromyalgia tender points" "both above and below the waist." Tr. 288. The only reasonable interpretation of these findings is Dr. Tauben found Ms. Osborne suffered from pain in all quadrants of the body.

Second, the ALJ found "Dr. Tauben did not provide any specific documentation regarding claimant's tender point examination," and also failed to provide sufficient detail or explanation. Tr. 103. The record, however, shows Dr. Tauben examined Ms. Osborne and made specific findings about her tender points. The doctor found "she has 18 of 18 positive fibromyalgia tender points, which are extremely sensitive even to below threshold pressure." Tr.

REPORT AND RECOMMENDATION - 3

278. In a subsequent examination he again noted "She has marked hyperalgesia, nearly allodynua to palpation of widespread fibromyalgia tender point, 18/18 positive both above and below the waist." Tr. 288.

Third, the ALJ found Dr. Tauben's fibromyalgia diagnosis did not "exclude the possibility that other disorders were the cause of the claimant's symptoms." Tr. 103. However, the record reveals Dr. Tauben repeatedly separated Ms. Osborne's fibromyalgia symptoms from her other medical conditions. For instance in June 2008, Dr. Tauben noted Ms. Osborne had "fibromyalgia plus significant centralized right shoulder pain from her multiple surgeries." Tr. 258. In February 2010, he found Ms. Osborne suffered from pain on the left and right due to surgery, that she had back pain, that she joint pain, and that she had widespread muscle pain. Tr. 270. In September 2010, Dr. Tauben found Ms. Osborne had "severe bilateral osteoarthritis superimposed on fibromyalgia." Tr. 276. And in June 2011, the doctor opined Ms. Osborne suffered from "fibromyalgia syndrome, somewhat refractory, exacerbated and sustained by osteoarthritis." Tr. 282.

And finally, the ALJ rejected Dr. Tauben's diagnosis on the grounds he is not "certified in rheumatology." Tr. 103. The ALJ erred as a matter of law in relying on this ground. An ALJ may not reject a medical doctor's opinion simply because the doctor is not a "specialist." *See e.g., Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (holding if a treating physician provided treatment for the claimant's psychiatric impairment, his opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he was not a board certified psychiatrist).

In sum the reasons the ALJ gave to reject Dr. Tauben's fibromyalgia diagnosis are not supported by substantial error and not free of legal error. The ALJ's error is harmful because it

REPORT AND RECOMMENDATION - 4

resulted in an analysis of Ms. Osborne's RFC that failed to account for her fibromyalgia symptoms singly, or in combination with her other impairments. *See* 20 C.F.R. § 416.945(a) (In determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports, to determine what capacity the claimant has for work.). As such, the ALJ on remand should reassess Dr. Tauben's opinions and the impact Fibromyaglia has on Ms. Osborne's capacity to perform gainful work activity.

### B. The ALJ gave at least one valid reason to discount Ms. Osborne's testimony

Ms. Osborne contends the ALJ erred in evaluating her credibility. Dkt. 12 at 8-11. Where, as here, there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Molina v. Astrue,* 674 F.3d 1104, 1112 (9th Cir. 2012); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ rejected Ms. Osborne's testimony for three reasons. First, the ALJ discounted Ms. Osborne's credibility because she made inconsistent statements. Tr. 105. This is a valid basis for discounting a claimant's credibility. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider ordinary techniques of credibility evaluation, including inconsistent statements, in weighing a claimant's credibility). The ALJ's reasoning is also supported in fact. The ALJ found Ms. Osborne reported in her 2011 disability report that she stopped working on June 1, 2008, because of her disabling conditions. Tr. 105. The ALJ found

1   this statement was inconsistent with statements she made on June 16, 2008, to Dr. Tauben that
2   she had a new job. *Id.*   The ALJ further noted Ms. Osborne's 2011 disability report was
3   inconsistent with statements she made to Dr. Lisa Cowden, Ph.D., about how she had been laid
4   off in 2008, and Dr. Tauben's March 2011 notes indicating Ms. Osborne was "unemployed due
5   to layoff rather than active pain." *Id.*

6         Ms. Osborne does not dispute the ALJ's finding that the record shows she made
7   inconsistent statements about why she stopped working.  Rather she argues "it is wholly
8   irrelevant when or why Ms. Osborne stopped working in 2008 since she is not alleging she
9   became disabled until May 7, 2009."  Dkt. 12 at 9.  The argument misses the mark because it
10  does not address the plain fact that Ms. Osborne made inconsistent statements about why she
11  stopped working.  The Court accordingly finds that it was not unreasonable for the ALJ to find
12  Ms. Osborne's less than fully credible based upon the inconsistent statements she made about
13  why she stopped working.

14        The ALJ also discounted Ms. Osborne's testimony because she could walk for 30
15  minutes three times a week. Tr. 106.  A claimant's reported daily activities can form the basis
16  for an adverse credibility determination if they consist of activities that contradict the claimant's
17  "other testimony"; or that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639
18  (9th Cir. 2007); *Smolen*, 80 F.3d at 1284  n.7; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th
19  Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations
20  would these activities have any bearing on Claimant's credibility"); *see also Light*, 119 F.3d at
21  792.  Here, the ALJ erred because he failed to identify what testimony was undermined by Ms.
22  Osbornes's activities. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("General findings
23  are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

REPORT AND RECOMMENDATION - 6

undermines the claimant's complaints.").

And finally the ALJ discounted Ms. Osborne's testimony as inconsistent with objective findings in the medical record.  This is nothing more than a conclusory statement and fall far short of the requirement that to reject a claimant's testimony the ALJ  must provide specific, clear and convincing reasons for rejecting a claimant's testimony.

In summary, the ALJ provided some valid and some invalid reasons for discounting Ms. Osborne's testimony.  Nevertheless, the ALJ's valid reason is not negated by the inclusion of erroneous reasons, and Ms. Osborne has failed to establish that the ALJ's valid reasons for discounting his credibility are erroneous.  Because any errors in the ALJ's credibility findings are harmless, s*ee See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), the Court declines to disturb the ALJ's credibility finding.

**C.     Scope of remand**

Ms. Osborne argues the Court should reverse and remand the Commissioner's final decision for an award of benefits, or in the alternative for further administrative proceedings.  Dkt. 12 at 11.  Where the ALJ has committed reversible error, the Court has the discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir. 1990).  Only in rare circumstances should a case be remanded for benefits.  *See Treichler v. Colvin*, 775 F3d 1090*,* 1099 (9th Cir. 2014).  The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996)).  If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings.  *McCartey,* 298 F.3d at 1076*.*   This is the case here. Ms.

REPORT AND RECOMMENDATION - 7

Osborne's contentions regarding the ALJ's treatment of Dr. Tauben's opinion revolves around the ALJ's rejection of his Fibromyalgia diagnosis. The record is not fully developed because the ALJ did not evaluate the impact of Fibromyalgia on Ms. Osborne's capacity to perform gainful work, and the Court declines to do so in the first instance. The case should therefore be remanded for further administrative proceedings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The record establishes that fibromyalgia is a severe impairment for purposes of step two. On remand, the ALJ should therefore reassess the impact fibromyalgia has on Ms. Osborne's RFC; reassess Dr. Tauben's opinions, develop the record as needed, and proceeds to steps four and five as appropriate.

Any objection to this Report and Recommendation or the attached proposed order must be filed and served no later than **August 11, 2016.** If no objections are filed, the Clerk shall note the matter for August 12, 2016 as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed **eight** pages. The failure to timely object may affect the right to appeal.

DATED this 29th day of July, 2016.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9